IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| ROSINDA MATUTE-CASTELLANOS,<br><br>  Plaintiff,<br><br>vs.<br><br>GEICO INDEMNITY COMPANY,<br>JOHN DOE 1, and JOHN DOE 2,<br><br>  Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION FILE<br><br>NO. 1:16-CV-03756-TWT |

## BRIEF IN SUPPORT OF DEFENDANT GEICO INDEMNITY COMPANY'S MOTION FOR SUMMARY JUDGMENT

COMES NOW **GEICO INDEMNITY COMPANY ("GEICO")**, a

Defendant in the above-styled action, and files this Brief in Support of its Motion

for Summary Judgment, showing this Court as follows:

## STATEMENT OF FACTS

**A.**   **Plaintiff Was Paid for the Vehicle and Agreed to Surrender the Vehicle**

This lawsuit arises out of a car accident that occurred on March 8, 2012,

between Elmo Watkins, an insured of GEICO, and Plaintiff. (Pl.'s Comp., ¶ 7). In

April of 2012, GEICO issued payment to Plaintiff in the amount of $1,108.01 as

full payment for the total loss of Plaintiff's vehicle (the "vehicle"). (Pl.'s Comp., ¶

10). In return for GEICO's payment of $1,108.01, Plaintiff signed title of the vehicle over to GEICO. (Rosinda Matute-Castellanos Dep., p. 26, ll. 8-18; p. 27, ll. 8-10). Plaintiff also agreed to make her vehicle available for pick up at her apartment (3207 Henderson Mill Road, Atlanta, GA 30341). (Matute Dep., p. 27, l. 15- p. 28, l. 5).

**B.     Insurance Auto Auctions Made Three Attempts to Retrieve Plaintiff's Vehicle**

Despite Plaintiff's agreement to make the vehicle available for pickup at her apartment, Plaintiff failed to abide by her agreement and thwarted GEICO's attempts to recover the vehicle. On April 2, 2012, a driver from Insurance Auto Auctions attempted to retrieve the vehicle from 3207 Henderson Mill Road, but could not locate the vehicle. (*See* Insurance Auto Auctions records, attached hereto as Ex. A). Insurance Auto Auctions made a second attempt to retrieve the vehicle at 3207 Henderson Mill Road on April 27, 2012. *Id.* Again, the vehicle was not found at 3207 Henderson Mill Road. *Id.* On May 3, 2012, an employee with Insurance Auto Auctions spoke with Plaintiff, and Plaintiff agreed to make the vehicle available for pickup at 3207 Henderson Mill Road on May 4, 2012, between 12:00 p.m. and 5:00 p.m. *Id.* When the agent for Insurance Auto Auctions arrived at 3207 Henderson Mill Road on May 4, 2012, the vehicle, once again, could not be located, and Plaintiff refused to speak with the driver. *Id.*

- 2 -

### C.   GEICO Conducted an Investigation to Locate Plaintiff's Vehicle

On May 15, 2012, GEICO assigned Mike Mitchell ("Mitchell"), a senior investigator with GEICO's Special Investigations Unit, to locate the vehicle. (Mike Mitchell Aff., attached hereto as Ex. B).  Mitchell was aware that GEICO had paid Plaintiff for the vehicle and of Insurance Auto Auctions' previous unsuccessful attempts to retrieve the vehicle.  (Mitchell Aff., ¶ 4).  Mitchell's investigation included: attempting to contact Plaintiff; canvassing the apartments at 3207 Henderson Mill Road; canvassing Plaintiff's prior addresses; interviewing employees at the management office of 3207 Henderson Mill Road; reviewing towing logs for 3207 Henderson Mill Road; and speaking with Mayra Rubio ("Rubio"), Plaintiff's legal counsel's assistant.  (Mitchell Aff., ¶¶ 5-11).

Mitchell informed Rubio that if the vehicle was not recovered, he would report Plaintiff to the police.  (Mitchell Aff., ¶ 10).  On May 31, 2012, Rubio told Mitchell that Plaintiff moved the vehicle to a parking lot at 3559 Chamblee Tucker Road and that Plaintiff had since reported the vehicle stolen.  (Mitchell Aff., ¶ 11).  Mitchell could not locate the vehicle at 3559 Chamblee Tucker Road.  (Mitchell Aff., ¶ 12).  Mitchell spoke with a manager, Jonathan Lewis ("Lewis"), at the Kroger Shopping Center located at 3559 Chamblee Tucker Road.  *Id.*  Lewis reviewed towing records for the lot and could not locate any record of the vehicle

- 3 -

being towed from 3559 Chamblee Tucker Road. *Id.* On June 4, 2012, Rubio advised Mitchell she could no longer reach Plaintiff or get Plaintiff to return her calls. (Mitchell Aff., ¶ 13).

## D.    GEICO Reported Plaintiff's Actions to the Chamblee Police Department

On June 7, 2012, Mitchell filed an incident report with the Chamblee Police Department. (Mitchell Aff., ¶ 14). Mitchell also provided a written statement to the Chamblee Police Department. *Id.* Mitchell's statement included the following facts: 1) GEICO issued payment of $1,108.01 to Plaintiff for her vehicle; 2) Plaintiff signed title of her vehicle over to GEICO; 3) Plaintiff retained possession of the vehicle after receiving payment; 4) Plaintiff agreed to make the vehicle available for pick up by GEICO representatives; 5) GEICO representatives attempted to recover Plaintiff's vehicle on multiple occasions; 6) Plaintiff moved the vehicle prior to the representatives arrival; 7) Plaintiff later moved the vehicle to a parking lot at 3559 Chamblee Tucker Road; and 8) Plaintiff had since reported the vehicle stolen to the DeKalb Police Department. (*Id.*; *see also* Detective Chris Newberry Aff., attached hereto as Ex. C).

Mitchell was not involved in the Chamblee Police Department's investigation regarding the vehicle. (Mitchell Aff., ¶ 15). Mitchell was not involved in the decision to swear a warrant out for Plaintiff's arrest. *Id.* Although

- 4 -

he made multiple attempts to contact Plaintiff, Mitchell never met or spoke to Plaintiff during his investigation. (Mitchell Aff., ¶ 16). Mitchell's decision to report Plaintiff's actions to the police was not motivated by personal spite or ill will toward Plaintiff. *Id.* Mitchell reported Plaintiff's actions to the police because the vehicle could not be located and because he could not reach Plaintiff by phone or through her attorney. *Id.*

### E.   Detective Chris Newberry Conducted an Investigation and Swore Out a Warrant

The case was assigned to Detective Chris Newberry ("Newberry") with the Chamblee Police Department. (Newberry Aff., ¶ 3). Detective Newberry conducted an independent investigation which included: reviewing Mitchell's statement and Plaintiff's police report; contacting Mitchell and the DeKalb Police Department; verifying the vehicle had not been recovered by GEICO or DeKalb County; attempting to contact Plaintiff multiple times; and conducting a Georgia Crime Information Center search to determine if any agency had located the vehicle. (Newberry Aff., ¶¶ 5-14).

Based on inconsistencies and omissions contained in Plaintiff's police report, Plaintiff's delay in reporting the vehicle stolen, Plaintiff's failure to return Newberry's calls, and Plaintiff's decision to frequently relocate her totaled vehicle, Detective Newberry suspected Plaintiff had "sold the vehicle and had reported her

- 5 -

vehicle stolen to obstruct GEICO's attempts to recover her vehicle." (Newberry Aff., ¶¶ 5-13). On July 24, 2012, based on his independent investigation and professional judgment, Detective Newberry presented the facts of the case to Judge Harvey at the DeKalb County Magistrate Court. (Newberry Aff., ¶¶ 15-16). Judge Harvey agreed there was probable cause for the charge of Concealment of Property, and a warrant was sworn out against Plaintiff on July 24, 2012. *Id.*

## F.    DeKalb County Declined to Prosecute Plaintiff

On March 8, 2014, Plaintiff was arrested based on the warrant issued on July 24, 2012. (Pl.'s Comp., ¶ 26). The charges against Plaintiff and the July 24, 2012 warrant were reviewed by Deputy Chief Assistant Solicitor-General Kelly McMichael ("McMichael"). (Solicitor Kelly McMichael Aff., attached hereto as Ex. D). Solicitor McMichael determined the statute of limitations for the charges against Plaintiff had expired and filed a Notice That No Accusation Will Be Filed on April 14, 2014. (McMichael Aff., ¶¶ 4-7). The April 14, 2014, Notice That No Accusation Will Be Filed terminated the criminal case against Plaintiff. (McMichael Aff., ¶ 8). Plaintiff did not appear before any court of record for the charges listed in the July 24, 2012 warrant. (McMichael Aff., ¶ 9). There was no prosecution of Plaintiff for the charges listed in the July 24, 2012 warrant. (McMichael Aff., ¶ 10).

- 6 -

## LEGAL STANDARD OF REVIEW

Defendant is entitled to summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 317, 106 S. Ct. 2548, 2550, 91 L. Ed. 2d 265 (1986); Fed. R. Civ. P. 56. While the court is to view all evidence and factual inferences in a light most favorable to the non-moving party, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). No genuine issues of material fact exist in this case, and therefore, GEICO is entitled to summary judgment.

## ARGUMENT AND CITATION OF AUTHORITY

**I.   GEICO IS NOT LIABLE FOR MALICIOUS PROSECUTION AS NO PROSECUTION WAS CARRIED ON AGAINST PLAINTIFF**

Plaintiff claims GEICO "maliciously and without probable cause prosecuted plaintiff for the crime of Concealment of Property with Security Lien, in violation of O.C.G.A. § 16-9-51." (Pl.'s Comp., ¶ 39). GEICO denies these allegations as

- 7 -

the decision to arrest plaintiff was made by the Chamblee Police Department, and GEICO acted with probable cause and without malice. (Newberry Aff., ¶¶ 5-16; Mitchell Aff., ¶¶ 4-16). Even if Plaintiff's allegations were true, GEICO cannot be liable for malicious prosecution because no prosecution was carried on against Plaintiff. (McMichael Aff., ¶¶ 6-10).

O.C.G.A. § 51-7-40 provides, "[a] criminal prosecution which is carried on maliciously and without any probable cause and which causes damage to the person prosecuted shall give him a cause of action." *Id.* For malicious prosecution, O.C.G.A. § 51-7-42 defines a prosecution as "an inquiry before a committing court or a magistrate...." *Id.* A bond hearing is not "an inquiry" for the purposes of a claim for malicious prosecution:

> The facts here do not support a finding that a "prosecution" occurred. An initial bond hearing is not equivalent to a hearing before a magistrate to determine if there is sufficient evidence for a grand jury. A bond hearing requires no evaluation of evidence or inquiry into the merits of a case. There is no evidence in the record that Judge Deal questioned Plaintiff or did anything other than set the bond amount.

*Farr v. Blackwell*, No. 2:11-CV-0074-RWS, 2013 WL 1136948, at *3 (N.D. Ga. Mar. 18, 2013) (internal cits. omitted).

In the instant case, Plaintiff's only court appearance was a bond hearing in which she was informed of the charges against her and the amount of her bond. (Matute Dep., p. 67, l. 18-p. 68, l. 24). Plaintiff was not permitted to speak or ask

- 8 -

questions at this hearing. (Matute Dep., p. 68, ll. 6-24). As in *Farr*, Plaintiff's bond hearing does not establish that a prosecution was carried on against Plaintiff.

The lack of prosecution is further supported by the testimony of Solicitor McMichael. (McMichael Aff., ¶¶ 6-10). Solicitor McMichael reviewed the charges against Plaintiff, determined the applicable statute of limitations had run, and terminated the case against Plaintiff. (McMichael Aff., ¶¶ 4-8). Solicitor McMichael confirmed Plaintiff never appeared before any court of record and that there was no prosecution of Plaintiff. (McMichael Aff., ¶¶ 9-10).

Based on the holding in *Farr* and the testimony of Solicitor McMichael, Plaintiff never appeared for "an inquiry before a committing court or a magistrate." Because Plaintiff did not appear before a committing court or a magistrate, no prosecution was "carried on" against Plaintiff. Therefore, as there is no evidence of any prosecution, Plaintiff cannot maintain a claim for malicious prosecution under O.C.G.A. § 51-7-40, and GEICO is entitled to summary judgment.

## II.   GEICO IS NOT LIABLE FOR FALSE ARREST

Plaintiff alleges that GEICO is liable for false arrest because GEICO "provided false information and omitted important information to the police in order to have Plaintiff arrested." (Pl.'s Comp., ¶ 36). Plaintiff further alleges she was "falsely arrested as a result of the false and inaccurate information provided to

- 9 -

the Chamblee Police." (Pl.'s Comp., ¶ 37). It is Plaintiff's contention that GEICO "acted with malice and without sufficient probable cause in having Plaintiff arrested." (Pl.'s Comp., ¶ 38). An examination of the record and relevant case law establishes Plaintiff's allegations have no basis in law or fact.

## A.   GEICO Did Not Provide False or Misleading Information to the Police

To establish liability against a private actor for false arrest, it is necessary to show the private actor influenced a law enforcement official to begin criminal proceedings by providing false, misleading, or materially incomplete information. *Holmes v. Achor Ctr., Inc.*, 249 Ga. App. 184, 191, 547 S.E.2d 332, 337 (2001) ("[A] person may be held liable for unduly influencing the decision to prosecute by providing information that is known to be false, misleading or materially incomplete.").

During Plaintiff's deposition, Plaintiff was asked repeatedly, and at length, to identify any false or misleading information GEICO provided to the police. (Matute Dep., p. 71, l. 9-p. 79, l. 5). Plaintiff has no personal knowledge of any information GEICO provided to the Chamblee Police Department:

Q.   What did GEICO report to the Chamblee Police Department?
A.   That I had the vehicle.
Q.   Have you seen any written documents that state that GEICO told the Chamblee Police Department that you have the vehicle?

- 10 -

{Firm/201/01537/PLEADING/01556123.DOC }

A.     No, only what the judge said.  I have not seen it.
Q.     So sitting here today, you do not know what GEICO reported to the police department?
A.     It's not the same thing as the DeKalb?
Q.     No.  GEICO's detective Mike filed an incident report with the Chamblee Police Department.  Have you seen that incident report?
A.     No.
Q.     So then you're not aware of any false information that Mike provided to the police in that incident report, are you?
A.     No.  The only thing I know, that I went to jail because of your mistake.

(Matute Dep., p. 73, ll. 4-23).

Even though she has never seen Mitchell's statement to the Chamblee Police Department, Plaintiff contends GEICO falsely informed the police that Plaintiff had possession of the vehicle.  (Matute Dep., p. 79, ll. 2-5).  When asked what information GEICO omitted in Mitchell's report to the Chamblee Police Department, Plaintiff failed to provide any responsive information.  (Matute Dep., p. 76, ll. 3-20; p. 79, ll. 6-24).  Mitchell's statement establishes that he did not claim Plaintiff was currently in possession of the vehicle.  (Newberry Aff., ¶ 5; Mitchell Aff., ¶ 14).

Mitchell informed the police that Plaintiff had been paid for her vehicle by GEICO, that Plaintiff signed title of her vehicle over to GEICO, and that Plaintiff agreed to surrender her vehicle to GEICO.  *Id.*  Mitchell's statement also included information regarding Insurance Auto Auction's multiple failed attempts to

- 11 -

retrieve the vehicle and Plaintiff's decision to relocate the vehicle. *Id.* Rather than claim Plaintiff was in possession of the vehicle, Mitchell informed the police that Plaintiff had since reported the vehicle stolen and provided the police with Plaintiff's case number. *Id.* In other words, Mitchell reported the precise information uncovered during his investigation. (Mitchell Aff., ¶¶ 4-14). Plaintiff has no evidence that any information Mitchell provided was false or misleading. (Matute Dep., p. 73, ll. 4-23).

The case of *Atl. Zayre, Inc. v. Zachary*, 205 Ga. App. 481, 422 S.E.2d 667 (1992), involves similar facts and is instructive. In *Zachary*, an employee of a warehouse distribution facility brought suit against his employer following his arrest for theft. *Id.* at 483. The employee alleged his employer was liable for malicious prosecution for reporting information obtained by the employer's undercover investigator to the police. *Id.* At trial, the employer moved for a directed verdict, the trial court denied the motion, and the jury returned a verdict against the employer. *Id.* On appeal of the employer's motion for directed verdict, the Georgia Court of Appeals reversed, finding the employer's loss prevention manager did not provide any knowingly false information to the police:

> The transcript of the trial contains no evidence that defendant's loss prevention manager did any more than participate in providing to police the information gathered by the undercover investigator. While a jury would have been authorized to conclude that the undercover

- 12 -

agent had fabricated his representations concerning plaintiff, there is no evidence that any agent or employee of defendant Zayre had knowledge of any such lack of truthfulness. ... There is no evidence that defendant Zayre urged any action or played any role in the decision to prosecute plaintiff, it merely participated in providing police with information it reasonably believed to be truthful.

*Id.* at 484.

Here, like the employer's loss prevention manager in *Zachary*, Mitchell conducted an investigation, received information from a third party, and relayed that information to the police. Specifically, Mitchell provided the police with details regarding GEICO's communications with Plaintiff, GEICO's ownership interest in the vehicle, and his investigation of the vehicle's location. (Mitchell Aff., ¶ 14). The only fact included in Mitchell's statement that Plaintiff disagrees with is that, on multiple occasions, Plaintiff moved her vehicle prior to the arrival of drivers sent by Insurance Auto Auctions to take possession of the vehicle. *Id.*

That Plaintiff disagrees with Insurance Auto Auction's account, however, is not relevant. Just as in *Zachary*, while Plaintiff disputes information provided by a third party, there is no evidence that Mitchell had any reason to question the veracity of this information. Mitchell merely relayed information he was provided by Insurance Auto Auctions. In addition, as in *Zachary*, there is no evidence that Mitchell urged any action or played any role in the decision to arrest Plaintiff. Mitchell only provided the Chamblee Police Department with the facts obtained

- 13 -

during his investigation.   (Mitchell Aff., ¶¶ 4-15).  The decision to swear out a warrant for Plaintiff's arrest was made independently by the Chamblee Police Department.  (Newberry Aff., ¶¶ 5-16).

Based on the holding in *Zachary*, because Mitchell only provided what he believed to be truthful information and because there is no evidence that GEICO provided false or misleading information, GEICO cannot be liable for false arrest. Therefore, GEICO is entitled to summary judgment.  *See also El-Amin v. Trust Co. Bank*, 171 Ga. App. 35, 37, 318 S.E.2d 655, 657 (1984) ("The evidence shows that appellees merely relayed to Hicks facts known to them and did not urge Hicks directly or indirectly to arrest appellant. … There is no evidence that the matters so relayed were known by defendants to be false and we find no evidence of malice in their conduct."); *Tench v. Turner*, 201 Ga. App. 156, 157, 410 S.E.2d 357, 358 (1991) ("Reviewing the record, we find that defendant Turner did no more than relay facts concerning the automobile accident to a deputy sheriff. … Thus, defendants cannot be held liable for the arrest and prosecution of Mr. Tench.").

**B.    The Swearing Out of a Warrant for Plaintiff's Arrest was the Result of Detective Newberry's Independent Investigation and Professional Judgment**

Plaintiff's contention that she was arrested due to "false and inaccurate information provided to the Chamblee Police" directly conflicts with the testimony

- 14 -

of Detective Newberry.  (Pl.'s Comp., ¶ 37; Newberry Aff., ¶¶ 5-16).  First, as stated above, GEICO provided no false information to the Chamblee Police Department.  Second, even if there were issues of material fact in dispute regarding Mitchell's statement, Detective Newberry did not swear out a warrant against Plaintiff based solely upon Mitchell's statement.  (Newberry Aff., ¶¶ 5-16).

After reviewing Mitchell's statement, *Detective Newberry conducted his own independent investigation*, which involved: 1) verifying GEICO had not recovered the vehicle; 2) reviewing Plaintiff's police report in which she reported her vehicle stolen; 3) attempting to contact Plaintiff multiple times; 4) contacting the DeKalb County Police Department regarding Plaintiff's police report; and 5) performing a Georgia Crime Information Center search to determine if any law enforcement agency had located the vehicle.  (Newberry Aff., ¶¶ 5-14).  Based on the information obtained during Newberry's investigation, Newberry suspected Plaintiff had "unlawfully sold the vehicle...."  (Newberry Aff., ¶¶ 12-13).  Detective Newberry then swore out a warrant for Plaintiff's arrest.  (Newberry Aff., ¶¶ 15-16).

Thus, the decision to swear out a warrant for Plaintiff's arrest was based on Detective Newberry's independent investigation and professional judgment.  (Newberry Aff., ¶ 15).  In cases involving this precise issue, the Georgia Court of

- 15 -

Appeals has ruled if a law enforcement official makes a decision to arrest or prosecute based on their independent investigation and professional judgment, a private party cannot be held liable:

> Nevertheless, any factual issue generated by evidence that Ms. Schernekau indirectly urged Detective English to give plaintiff a subpoena or else take him to jail is rendered immaterial by Detective English's uncontradicted testimony that the decision to arrest plaintiff was made solely by him in the exercise of his professional judgment, and independently of any exhortations by defendants' agents. His subsequent statement that he would not have arrested plaintiff had he not been told of the circumstances by Ms. Schernekau and Ms. Smith does not contradict his earlier statement as to the exercise of his professional judgment. This evidence affirmatively shows the absence of any causal link between those acts attributable to defendants and the decision to arrest plaintiff.

*McLeod v. Pruco Life Ins. Co.*, 215 Ga. App. 177, 179, 449 S.E.2d 895, 897 (1994), *overruled in part by Ferrell v. Mikula*, 295 Ga. App. 326, 672 S.E.2d 7 (2008).

> The issue is not whether Shaw's version is uncontroverted, but whether the officer's testimony that he used his own independent, professional judgment in making the decision to arrest is uncontroverted. Even if he relied on Shaw's statement as a factor in determining to swear out the warrant against Jacobs, the officer's affidavit makes clear that the basis for swearing out the warrant also included his on-scene investigation, the review of the report from the state regulatory agency noting the pump worked properly, his telephone conversation with Jacobs, and his experience as a police officer. Judging the evidence in favor of Jacobs and giving him the benefit of every doubt ... the evidence shows that summary judgment was proper on these issues.

- 16 -

*Jacobs v. Shaw*, 219 Ga. App. 425, 426-27, 465 S.E.2d 460, 462 (1995), *overruled in part by Infinite Energy, Inc. v. Pardue*, 310 Ga. App. 355, 713 S.E.2d 456 (2011).

The facts of the instant case are no different than those present in *McLeod* and *Jacobs*. As in *McLeod* and *Jacobs*, the decision to arrest Plaintiff was based on the independent investigation and professional judgment of a law enforcement official. Moreover, as stated by the courts in *McLeod* and *Jacobs*, it is not relevant that Detective Newberry's investigation was initiated by Mitchell's statement or that Detective Newberry relied in part on information provided by Mitchell. Detective Newberry's uncontroverted testimony that his decision to swear out a warrant against Plaintiff was based on his investigation and professional judgment precludes GEICO from being held liable for Plaintiff's subsequent arrest. Plaintiff cannot overcome this testimony as Detective Newberry was the officer who swore out the warrant.

As such, based on the holdings of *McLeod* and *Jacobs*, and the testimony of Detective Newberry, because Plaintiff's arrest resulted from an independent investigation of the investigating officer, GEICO cannot be liable for false arrest, and GEICO is entitled to summary judgment.

- 17 -

## C.   GEICO Acted With Probable Cause and Without Malice

The record is devoid of any evidence to support Plaintiff's allegations that GEICO "did not have probable cause to believe that plaintiff committed a crime" or that GEICO "acted with malice and without sufficient probable cause in having Plaintiff arrested." (Pl.'s Comp. ¶¶ 35, 38). First, as stated above, the decision to swear a warrant out for Plaintiff's arrest was based on the independent investigation of Detective Newberry. (Newberry Aff., ¶¶ 5-16). Second, assuming *arguendo*, that Plaintiff could dispute Detective Newberry's testimony, GEICO had ample reason to believe Plaintiff was intentionally concealing the location of the vehicle, and there is no evidence that GEICO acted maliciously.

Under O.C.G.A. § 51-7-3, in cases involving false arrest, a "lack of probable cause" exists "when the circumstances are such as to satisfy a reasonable man that the accuser had no ground for proceeding but his desire to injure the accused." *Id.* Although the statute states that "lack of probable cause" is a jury question, Georgia courts have held that "what facts and circumstances amount to probable cause is a pure question of law." *Barnette v. Coastal Hematology & Oncology, P.C.*, 294 Ga. App. 733, 735-36, 670 S.E.2d 217, 220 (2008). When the facts are undisputed, the court, rather than a jury, determines if there is probable cause. *KMart Corp. v. Griffin*, 189 Ga. App. 225, 226-27, 375 S.E.2d 257, 258 (1988) ("For if the

- 18 -

material facts are essentially undisputed, whether or not probable cause existed is for determination by the court.").

Probable cause is "the existence of such facts and circumstances as would excite the *belief* in a reasonable mind, that the person charged was guilty of the crime for which he was arrested and prosecuted." *Smith v. Trust Co. Bank*, 215 Ga. App. 413, 415, 450 S.E.2d 866, 869 (1994); *McQueary v. Atlanta Airlines Terminal Corp.*, 198 Ga. App. 318, 319, 401 S.E.2d 333, 335 (1991). When determining probable cause, "the question is, not whether plaintiff was guilty, but whether defendants had *reasonable cause to so believe*—whether the circumstances were such as to create in the mind of defendants a *reasonable belief* that there was probable cause for the arrest and prosecution." *Smith*, 215 Ga. App. at 415; *McQueary*, 198 Ga. App. at 319.

Here, Mitchell knew that Plaintiff was paid for her vehicle, that Plaintiff transferred title to GEICO, and that Plaintiff agreed to surrender her vehicle to GEICO. (Mitchell Aff., ¶ 4). Insurance Auto Auctions employees made three attempts to retrieve the vehicle, the vehicle was never present at Plaintiff's address, and Plaintiff refused to explain the vehicle's absence. (Mitchell Aff., ¶¶ 5-6). Insurance Auto Auctions' extensive efforts to locate the vehicle were communicated to Mitchell. *Id.*

- 19 -

Mitchell was then informed that Plaintiff allegedly abandoned her vehicle at a public parking lot. (Mitchell Aff., ¶ 11). Mitchell could not locate the vehicle at the parking lot or at Plaintiff's current and former addresses. (Mitchell Aff., ¶¶ 8-12). Mitchell confirmed the vehicle was not towed by Plaintiff's apartment complex or by any towing agency at the parking lot. (Mitchell Aff., ¶¶ 9, 12). Mitchell attempted to contact Plaintiff numerous times, but Plaintiff never returned any of Mitchell's calls. (Mitchell Aff., ¶ 7). Only after Mitchell stated his intention to go to the police did Plaintiff report the vehicle stolen. (Mitchell Aff., ¶¶ 10-11). Eventually, Plaintiff's own attorney was unable to reach her. (Mitchell Aff., ¶ 13).

Based on these facts and circumstances, it was reasonable for Mitchell to believe Plaintiff's actions were criminal in nature. As stated above, while Plaintiff disputes Insurance Auto Auctions' records, Mitchell had no reason to question the information. *See Zachary*, 205 Ga. App. 483-84; *El-Amin*, 171 Ga. App. at 37.

Furthermore, the record is devoid of any evidence suggesting GEICO acted out of malice toward Plaintiff. For false arrest, O.C.G.A. § 51-7-2 provides "[m]alice consists in personal spite or in a general disregard of the right consideration of mankind, directed by chance against the individual injured." *Id.*; *Fuller v. Troup Cty.*, 253 Ga. App. 228, 230, 558 S.E.2d 777, 779 (2002). As

- 20 -

stated by the Georgia Court of Appels in *Desmond v. Troncalli Mitsubishi*, 243 Ga. App. 71, 532 S.E.2d 463 (2000), to prevail against GEICO, Plaintiff must show that Mitchell acted maliciously:

> There is nothing in the record before us that shows or tends to show that Pelligrinelli acted with malice in prosecuting Desmond for theft by conversion. Indeed, Desmond acknowledged that he never got to know Pelligrinelli on a personal level. And Desmond never deposed Pelligrinelli to ascertain what might have prompted him to prosecute Desmond. Accordingly, the trial court did not err in granting Troncalli's motion for summary judgment on both the false arrest and malicious prosecution claims.

*Id*. at 74-75.

Here, Mitchell's actions could not have been motivated by "personal spite" as Mitchell has never met or spoken to Plaintiff. (Mitchell Aff., ¶ 16). As in *Desmond*, nothing in the records suggests Mitchell acted maliciously when he reported Plaintiff's actions to the police. Prior to filing an incident report, Mitchell searched for Plaintiff's vehicle at multiple locations, verified that the vehicle had not been towed, and attempted to contact Plaintiff multiple times. (Mitchell Aff., ¶¶ 5-12). Plaintiff was nonresponsive. Contrary to Plaintiff's unsupported allegations of malice, Mitchell reported Plaintiff's actions to the police because the vehicle could not be located and because he could not reach Plaintiff. (Mitchell Aff., ¶¶ 16).

- 21 -

Like the *Desmond* case, Plaintiff has not deposed Mitchell.  Hence, as in *Desmond*, Mitchell never got to know Plaintiff on a personal level to even develop any sort of animosity or malice towards Plaintiff as Plaintiff was nonresponsive to all of Mitchell's attempts to contact Plaintiff.  Consequently, based on the holding in *Desmond*, because Mitchell has never met or spoken to Plaintiff, was not deposed, and because Mitchell conducted a reasonable investigation, Plaintiff cannot show any evidence that Mitchell acted with malice.

Because there is no evidence that GEICO acted without probable cause and with malice, GEICO cannot be liable for false arrest, and GEICO is entitled to summary judgment. *Smith*, 215 Ga. App. at 415; *El-Amin*, 171 Ga. App. at 37; *Desmond*, 243 Ga. App. at 74-75; O.C.G.A. § 51-7-1; O.C.G.A. § 51-7-40.

## III.   PLAINTIFF HAS IDENTIFIED NO EVIDENCE IN SUPPORT OF PLAINTIFF'S CLAIM FOR NEGLIGENT HIRING, TRAINING, AND SUPERVISION

Plaintiff's Complaint asserts "Defendants were negligent in hiring, training and supervising the staff in the pickup and investigation of the recovery of vehicles and reporting them to the State." (Pl. Comp., ¶ 42).  To survive a motion for summary judgment on a claim for negligent hiring, training, and supervision, Plaintiff must "produce some evidence of incidents similar to the behavior that was the cause of the injury at issue." *Doe I v. Young Women's Christian Ass'n of*

*Greater Atlanta, Inc.*, 321 Ga. App. 403, 408, 740 S.E.2d 453, 456 (2013), *recon. denied* (Apr. 11, 2013).  Additionally, with regard to negligent training claims, "there must be a causal link between the alleged breach of duty and the injury caused." *Doe I*, 321 Ga. App. at 408; *La Petite Acad., Inc. v. Turner*, 247 Ga. App. 360, 362, 543 S.E.2d 393, 396 (2000).

During discovery, GEICO requested that Plaintiff identify all facts which support Plaintiff's claim for negligent hiring, training, and supervision.  (GEICO's First Interrogatories Plaintiff, pp. 21-22, No. 36).  Plaintiff did not respond to this Interrogatory, or otherwise offer a scintilla of evidence to support a claim for negligent hiring, training, and supervision.  (Plaintiff's Response to GEICO's First Interrogatories).  When asked during her deposition to identify any facts that support Plaintiff's allegation that GEICO was negligent in hiring, training, and supervising its staff, Plaintiff failed to provide any responsive information. (Matute Dep., p. 80, ll. 1-18).

As Plaintiff has not identified any evidence in support of Plaintiff's claim for negligent hiring, training, and supervision, Plaintiff's claim cannot survive summary judgment, and GEICO is entitled to summary judgment. *Doe I*, 321 Ga. App. at 408; *La Petite Acad., Inc.*, 247 Ga. App. at 362.

- 23 -

## CONCLUSION

WHEREFORE, for the aforementioned reasons, Defendant GEICO

Indemnity Company respectfully requests summary judgment be granted in its

favor.

This _____ day of March, 2017.

**CRUSER, MITCHELL, NOVITZ,
SANCHEZ, GASTON & ZIMET, LLP**


_____
**J. ROBB CRUSER**
Georgia Bar No. 199480
**CRAIG P. TERRETT**
Georgia Bar No. 702410
**ROBERT N. FRIEDMAN**
Georgia Bar No. 945494
*Attorneys for Defendant GEICO Indemnity
Company*

Meridian II, Suite 2000
275 Scientific Drive
Norcross, GA  30092
(404) 881-2622
(404) 881-2630 – fax
rcruser@cmlawfirm.com
cterrett@cmlawfirm.com

## LOCAL RULE CERTIFICATION

Counsel hereby certifies that this pleading was prepared with one of the font

and point selections approved by the Court in LR 5.1C.  Specifically, Times New

Roman was used in 14 point.

- 24 -

{Firm/201/01537/PLEADING/01556123.DOC }

## CERTIFICATE OF SERVICE

I hereby certify that on this day, I electronically filed BRIEF IN SUPPORT

OF DEFENDANT GEICO INDEMNITY COMPANY'S MOTION FOR

SUMMARY JUDGMENT with the Clerk of Court using the CM/ECF system,

which will automatically send e-mail notification of such filing to the following

attorneys of record:

Talal "Perez" Ghosheh, Esq.
Ghosheh Law Firm, LLC
242 South Culver Street, Suite 200
Lawrenceville, GA  30046
talal@ghoshehlaw.com
*Counsel for Plaintiff*

This ⬚ day of March, 2017.

**CRUSER, MITCHELL, NOVITZ,
SANCHEZ, GASTON & ZIMET, LLP**

_____

**J. ROBB CRUSER**
Georgia Bar No. 199480
**CRAIG P. TERRETT**
Georgia Bar No. 702410
**ROBERT N. FRIEDMAN**
Georgia Bar No. 945494
*Attorneys for Defendant GEICO Indemnity
Company*

Meridian II, Suite 2000
275 Scientific Drive
Norcross, GA  30092
(404) 881-2622
(404) 881-2630 – fax
rcruser@cmlawfirm.com
cterrett@cmlawfirm.com

- 25 -
